UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

UNITED STATES OF AMERICA,

           Plaintiff,

    -against-

ALEXI SAENZ, a/k/a "Blasty" and "Plaky,"
and JAIRO SAENZ, a/k/a "Funny," *et al.*

           Defendants.
----------------------------------------X

MEMORANDUM OF
DECISION & ORDER

16-CR-403(GRB)

**FILED**
**CLERK**

2:00 pm, Dec 27, 2022

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

Appearances:

For Defendant Alexi Saenz:

Natali H. Todd
Law Offices of Natali J.H. Todd, P.C.
26 Court St.
Suite 413
Brooklyn, NY 11242

For Defendant Jairo Saenz:

Beverly Van Ness
233 Broadway, Suite 2704
New York, NY 10279

Kelly J. Sharkey
26 Court Street Suite 2805
Brooklyn, NY 11242

Gary S. Villanueva
11 Park Place, Suite 1601
New York, NY 10007

Jacqueline K. Walsh
Walsh & Larranaga
140 Lakeside Ave, Suite A-338
Seattle, WA 98122

1

Case 2:16-cr-00403-GRB-SIL   Document 2279   Filed 12/27/22   Page 2 of 11 PageID #: 15557

For the Government:

Breon Peace
United States Attorney
610 Federal Plaza
Central Islip, NY 11722
By:    Justina L. Geraci
        Paul G. Scotti
        Megan E. Farrell
        Assistant United States Attorneys

**GARY R. BROWN, United States District Judge**:

In this prosecution arising from alleged criminal activity by purported members and leaders of La Mara Salvatrucha (the "MS-13"), defendants Alexi Saenz and Jairo Saenz have filed motions to suppress evidence obtained pursuant to three search warrants: one executed in a residence, and two vehicular search warrants. Because the challenges raised as to those warrants are meritless, the motions are denied.

## BACKGROUND

This prosecution commenced in 2016 with the filing of an indictment against four co-defendants, all alleged members of the MS-13, in connection with various alleged acts of racketeering activity, including murders, assaults, and firearms and narcotics offenses. DE 8. The grand jury has since returned a series of superseding indictments, each adding defendants and additional criminal activities.

On October 16, 2019, a grand jury sitting in this district returned a 75-page, 89-count Seventh Superseding Indictment charging the Saenz defendants, who are brothers, along with 24 other individuals, with criminal acts on behalf of the MS-13. DE 1163. The Saenz brothers were charged together in numerous counts, including capital offenses relating to the deaths of seven

individuals.[1]  *Id.*  The Seventh Superseding Indictment charges a total of fifteen homicides, including eight homicides in which the Saenz defendants are not charged.  *See* DE 1163, Racketeering Acts Nos. 3, 4, 8, 11, 23, 24, 25 & 26.  On July 15, 2020 and November 20, 2020, following authorization by the former Attorney General, the Government filed Notices of Intent to Seek the Death Penalty against Alexi and Jairo Saenz, respectively.  DE 1429, 1539.  On December 14, 2022, a grand jury returned an Eighth Superseding Indictment.  DE 2267.

*The Challenged Search Warrants*

As part of the underlying investigation, on March 1, 2017 Magistrate Judge Locke issued arrest warrants for the Saenz defendants and three search warrants authorizing the search of two vehicles and premises maintained by the Saenz brothers in Central Islip, New York.  DE 2135-1 at 2-11.  Each of those warrants authorized agents to search those locations for the following:

  1. Biological and/or trace evidence, including. without limitation, blood, DNA, fingerprints, hairs and fibers.

  2. Cellular telephones, smart phones/devices, smart books, computers, and/or other electronic devices, including any devices capable of accessing Facebook, Facebook Messenger, WhatsApp and/or WhatsApp Messenger, including, without limitation, the A. SAENZ TELEPHONE and J. SAENZ TELEPHONE.

  3. Firearms, ammunition, machetes, knives, baseball bats or other weapons.

  4. Speakers and music or sound equipment.

  5. MS-13 paraphernalia, photographs and/or graffiti, including photographs of MS-13 members and symbols.

  6. Marijuana, cocaine, United States currency, drug packaging materials, scales, lists of customers and related identifying information, ledgers containing types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions, any information related to sources of drugs (including

---

[1] In two instances, to wit: the notorious murders of Nisa Mickens and Kayla Cuevas, the Superseding Indictment charges the Saenz defendants as "accessories after the fact" under 18 U.S.C. § 3, punishable by 15 years in prison.  DE 1163 at 55, Count 53.   At the same time, the indictment charges these defendants substantively in the homicides, giving rise to a potential death sentence for these offenses under 18 U.S.C. § 2.  *Id*. at 53–54, Counts 50 and 52.

3

> names, addresses, phone numbers, or any other identifying information), and all bank records, checks, credit card bills, account information, and other financial records, including wire transfer receipts and records.
>
> All of which constitute evidence, fruits and instrumentalities of racketeering, racketeering conspiracy, violent crimes in aid of racketeering, and related firearms offenses, in violation of 18 U.S.C. §§ 1962(c), 1962(d), 1959(a). 924(c)(l)(A)(i)-(iii) and 924(j)(1), and a conspiracy to distribute marijuana in violation of 21 U.S.C. §§ 841(b)(l)(D) and 846.

Defendants seek suppression principally on the ground that the warrants lacked the requisite particularity under the Fourth Amendment. DE 2135. This opinion follows.

## DISCUSSION

Before considering defendants' core challenge to the search warrants, several threshold issues can be quickly dispatched. First, the Government properly points out that one search warrant – aimed at a Nissan Maxima – involved a vehicle owned and controlled by an individual other than the Saenz brothers, and argues that these defendants have failed to establish standing to challenge the fruits of that warrant. DE 2223 at 7*ff*; *United States v. Payner*, 447 U.S. 727, 731 (1980) (defendant may only challenge actions that "invaded *his* legitimate expectation of privacy rather than that of a third party") (emphasis in original)). On this motion, defendants provide no factual material other than the affidavit in support of the arrest warrants, which indicates that the subject Maxima was owned and operated by Selvin Chavez, a codefendant, and had been observed by law enforcement officers parked adjacent to his residence. DE 2135-1 at 20-21, 26, and 28. As defendants neither claim any possessory interest in the subject vehicle nor submit any factual materials reflecting their ownership, control or possession of the subject vehicle, they cannot meet their burden of establishing a legitimate expectation of privacy therein. *Rakas v. Illinois*, 439 U.S. 128, 133-34, 148 (1978) (rejecting challenge to vehicular warrant where defendant failed to assert or establish legitimate expectation of privacy).

Second is the question of whether any evidentiary hearing is required on this motion. While counsel has, during court appearances, requested an evidentiary hearing, *see, e.g.*, Tr. of Proceedings dated 12/15/22, a defendant seeking a hearing must make some plausible factual showing of the need for such a hearing. *United States v. Mottley*, 130 F. App'x 508, 510 (2d Cir. 2005) (defendant's failure to adequately dispute factual issue averted need for hearing). Defendants have plainly failed to do so. More importantly, as defendants' challenges to the warrants focus on the facial sufficiency of the warrants, no hearing is required. Therefore, the Court will resolve this motion upon the papers submitted without the need for an evidentiary hearing.

*The Particularity Requirement*

"It is familiar history that indiscriminate searches and seizures conducted under the authority of 'general warrants' were the immediate evils that motivated the framing and adoption of the Fourth Amendment." *Payton v. New York*, 445 U.S. 573, 583 (1980). Judge Learned Hand observed that "the real evil aimed at by the Fourth Amendment is the search itself, that invasion of a man's privacy which consists in rummaging about among his effects to secure evidence against him." *United States v. Poller*, 43 F.2d 911, 914 (2d Cir. 1930).

To thwart these concerns, the particularity requirement was embedded into the language of Fourth Amendment, requiring that a warrant provide a description of "the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. As the Second Circuit recently reiterated:

> To prevent such "general, exploratory rummaging in a person's belongings" and the attendant privacy violations, *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S,Ct. 2022, 29 L.Ed.2d 564 (1971), the Fourth Amendment provides that "a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity." *Kentucky v. King*, –– U.S. –––, 131 S.Ct. 1849, 1856, 179 L.Ed.2d 865 (2011).

5

*United States v. Galpin*, 720 F.3d 436, 445 (2d Cir. 2013).  The Circuit went on to explain:

> The particularity requirement has three components.  First, a warrant must identify the specific offense for which the police have established probable cause.  *See United States v. Bianco*, 998 F.2d 1112, 1116 (2d Cir.1993) (warrant that contained no particular description of items and made no mention of any criminal statute or criminal conduct was "not supportable"), *abrogated on other grounds by Groh v. Ramirez,* 540 U.S. 551, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004); *United States v. George*, 975 F.2d 72, 76 (2d Cir.1992) (warrant authorizing search for evidence "relating to the commission of a crime" was overbroad because "[n]othing on the face of the warrant tells the searching officer for what crimes the search is being undertaken").  Second, a warrant must describe the place to be searched. *United States v. Voustianiouk*, 685 F.3d 206, 211 (2d Cir.2012); 2 W. LaFave, *Search and Seizure* § 4.6(a) (5th ed. 2012) ("[G]eneral searches are prevented by the other Fourth Amendment requirement that the place to be searched be particularly described.").  Third, the warrant must specify the "items to be seized by their relation to designated crimes." *United States v. Williams*, 592 F.3d 511, 519 (4th Cir.2010); *see also United States v. Buck*, 813 F.2d 588, 590–92 (2d Cir.1987) (finding that a warrant authorizing the seizure of "any papers, things or property of any kind relating to [the] previously described crime" failed the particularization requirement because it "only described the crimes—and gave no limitation whatsoever on the kind of evidence sought").  "[A]n otherwise unobjectionable description of the objects to be seized is defective if it is broader than can be justified by the probable cause upon which the warrant is based."  2 W. LaFave, *Search and Seizure* § 4.6(a) (5th ed. 2012).
>
> In an oft-quoted passage, the Supreme Court has held that the particularity requirement "makes general searches ... impossible and prevents the seizure of one thing under a warrant describing another.  As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." *Marron v. United States*, 275 U.S. 192, 196, 48 S.Ct. 74, 72 L.Ed. 231 (1927).  To be sure, we have noted that this "no discretion" standard "has not always been applied literally," and that courts may tolerate some ambiguity in the warrant so long as "law enforcement agents have done the best that could reasonably be expected under the circumstances, have acquired all the descriptive facts which a reasonable investigation could be expected to cover, and have insured that all those facts were included in the warrant." *United States v. Young*, 745 F.2d 733, 759 (2d Cir.1984).  Nonetheless, we have emphasized that "a failure to describe the items to be seized with as much particularity as the circumstances reasonably allow offends the Fourth Amendment because there is no assurance that the permitted invasion of a suspect's privacy and property are no more than absolutely necessary." *George*, 975 F.2d at 76.

*Id.* at 445–46.

6

Here, defendants argue that the description of the property to be seized contained in the first five categories of the attachment – fully set forth above – are insufficiently particular to survive Fourth Amendment scrutiny. Ultimately, this argument proves puzzling, as the categories, as can be seen, are quite specific. For example, category 3, to wit: "Firearms, ammunition, machetes, knives, baseball bats or other weapons," largely escapes defendants' argument, as it is difficult to imagine a clearer description of these items.

Remarkably, defendants specifically challenge category 4, described as "speakers and sound equipment," arguing that this description was too broad when viewed in the context of the supporting affidavit, and that the information was stale as the homicide occurred some six months earlier. However, the supporting affidavit described, in detail, information from a reliable confidential informant that a shirt, soaked in blood from one of the homicides under investigation, had been placed "on what appeared to be a speaker or some type of sound equipment" stored at the premises. DE 2135-1 at 27. Furthermore, the agent averred that, based on information received from an expert, biological and trace evidence could remain "on an object for many years." *Id.* As the description was nearly coextensive with the information available, it would appear that the investigator had "done the best that could reasonably be expected under the circumstances, [ ] acquired all the descriptive facts which a reasonable investigation could be expected to cover, and [ ] insured that all those facts were included in the warrant." *Galpin*, 720 F.3d at 446 (quoting *United States v. Young*, 745 F.2d 733, 759 (2d Cir.1984)).

Moreover, the implicit argument by defendants that the evidence was stale is undermined by the nature of the material sought, and the facts contained in the affidavit which made it clear that trace evidence might still be available in or on the speaker. *See, e.g.*, *United States v. Diaz*, 303 F. Supp. 2d 84, 90 (D. Conn. 2004) (even in the face of a 16-month "time lapse between the

7

alleged conduct and the search warrant application, the nature of the alleged criminal activity justifies the magistrate's finding that there was probable cause to believe that evidence of the offenses would be located at defendant's residence at the time the search warrant was requested"). As one court observed:

> When determining whether information is stale or not, the judicial officer must not only consider the age of the information, but the nature of the evidence sought. Some kinds of evidence are more evanescent than others. Some contraband, like narcotic drugs, are consumable. Other evidence, like an illegal firearm, is more apt to remain in one place for extended periods. As one court put it, "[t]he hare and the tortoise do not disappear at the same rate of speed." *Andresen v. Maryland*, 24 Md.App. 128, 331 A.2d 78, 106 (1975), *aff'd,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976).

*United States v. Lamb*, 945 F. Supp. 441, 460 (N.D.N.Y. 1996); *cf. United States v. Burgos-Montes*, 786 F.3d 92, 107–08 (1st Cir. 2015) ("An allegation of staleness is evaluated not merely on how old the information is, but circumstances including the nature of the suspected crime, the character of the items to be seized, the habits of the suspect, and the nature of the premises to be searched."). Here, the combination of a speaker or sound system – a durable household item not subject to consumption – and biological trace evidence that would not rapidly dissipate, undercuts the assertion of staleness.

Defendants similarly complain that the phrase "MS-13 paraphernalia, photographs and/or graffiti," with particular emphasis on the word "paraphernalia," is too ambiguous to appropriately cabin the searching officers' authority. Common dictionary definitions suggest that paraphernalia refer to "the miscellaneous items needed for or associated with a particular activity,"[2] while the term "gang paraphernalia" has gained a specific meaning. *Messerschmidt v. Millender*, 565 U.S. 535, 552 (2012) ("a reasonable officer could conclude that gang paraphernalia found at the

---

[2] *See* "paraphernalia, *n.*," Oxford English Dictionary, *available at* https://www.oed.com/view/Entry/137567?redirectedFrom=paraphernalia#eid.

residence would be an effective means of demonstrating Bowen's control over the premises"). Thus, the Court finds nothing vague or ambiguous with the description of gang paraphernalia in the search warrant, and finds that this category did not offend the Fourth Amendment particularity requirement.

Defendants further argue that the provision permitting the seizure of "[b]iological and/or trace evidence, including, without limitation, blood, DNA, fingerprints, hairs and fibers," proves impermissibly broad. Defendants complain that the phrase left executing agents sufficiently without tether such that the warrant runs afoul of the particularity requirement. Notably, the sole case relied upon by defendants, *United States v. Burgos-Montes*, 786 F.3d 92 (1st Cir. 2015), found that the phrase "[e]vidence and trace evidence relevant to the homicide" in a search warrant did not violate the particularity requisites of the Fourth Amendment. *Id.* at 108 (finding that such language together with the express incorporation of the search warrant affidavit survived constitutional challenge). Here, the investigation incorporated wide-ranging gang activity, including homicides, assaults and narcotics trafficking, including specific evidence that trace evidence from such activity had been deposited at the premises and in the subject vehicle. "The level of specificity required by the Fourth Amendment depends on many factors. The nature of the crime, for example, may require a broad search." *United States v. Dupree*, 781 F. Supp. 2d 115, 149 (E.D.N.Y. 2011).

The defendants' objection appears to stem principally from the contention that almost a dozen people occupied the premises, and the warrant thus encompassed trace evidence from some individuals not implicated in the matters under investigation. DE 2135 at 6. Of course, to the extent the warrant included trace evidence from others, defendants lack standing to raise an objection. *Rakas v. Illinois*, *supra*. Moreover, defendants have made no showing that would raise

9

a factual issue regarding this provision. Much the same could be said of defendants' argument concerning the seizure of electronic devices, as they assert the warrant did not distinguish those devices belonging to defendants from those of other residents. DE 2135 at 8. Standing issues aside, in the context of electronic devices, courts have drawn a distinction:

> Indeed, "due to the unique challenges that electronic searches pose, 'it is frequently the case with computers that the normal sequence of 'search' and then selective 'seizure' is turned on its head, as computer hardware is seized from a suspect's premises before its content is known and then searched at a later time." *Nejad*, 436 F. Supp. 3d at 728 (quoting *Vilar*, 2007 WL 1075041, at *35); *see also United States v. Hill*, 459 F.3d 966, 974 (9th Cir. 2006) (finding that officers were permitted to remove computer and storage media from the defendant's home pursuant to a search warrant "without first determining whether they actually contained child pornography").
>
> Thus, once the Government established probable cause to the satisfaction of the magistrate that electronic media at the 40 Holly Lane Premises would likely contain evidence, fruits, or instrumentalities of the subject offenses, the magistrate was authorized to permit the Government to seize the electronic media for later review at FBI headquarters. A contrary conclusion would be perverse. It would either preclude the agents from seizing the media at all or, more likely, require them to remain at the premises being searched while they methodically reviewed each of the items of electronic media, effecting an even greater intrusion on the occupant's privacy.

*United States v. Ray*, 541 F. Supp. 3d 355, 393 (S.D.N.Y. 2021). Defendants' motion papers reveal that the Government employed proper procedures here, later seeking a search warrant for the contents of seized electronic devices. DE 2135-1 at 38-60.

In short, the Court finds that the seizure warrants were sufficiently particularized to guide the efforts of the executing agents. Even assuming, *arguendo*, that one or more categories complained of were overly broad, the good faith exception would require denial of the motion. *United States v. Leon*, 468 U.S. 897, 922 (1984). In other words, this is not a circumstance in which "the warrant is so facially deficient that reliance upon it is unreasonable." *Galpin*, 720 F.3d at 452.

10

Finally, listing a handful of items from an evidence collection log (which does not appear to have been supplied to the Court), counsel makes a catchall objection suggesting that certain items seized may have been outside the scope of the warrant. DE 2135 at 14-15. Oddly, several of the items listed by counsel, including "knives," "hats,"[3] "spray paint," and "speaker boxes," DE 2135 at 14-15, are either expressly identified in the warrant or clearly fall well within one of the categories listed on the face of the warrant. Having provided no evidentiary support for the suggestion that items outside the scope of the warrant were seized, defendants have failed to meet their burden at this juncture. And, of course, even if defendants could demonstrate that certain items were inappropriately seized, "when items outside the scope of a valid warrant are seized, the normal remedy is suppression and return of those items, not invalidation of the entire search." *United States v. Matias*, 836 F.2d 744, 747 (2d Cir. 1988).

## CONCLUSION

Based on the foregoing, defendants' motion for suppression is DENIED.

Dated: Central Islip, New York
December 27, 2022

/s/ Gary R. Brown
GARY R. BROWN
United States District Judge

---

[3] In its brief, the Government identifies a seized hat "bearing the acronym of the Sailors clique ("S.L.S.W.") and the image of an anchor." DE 2223 at 5.