UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------X

UNITED STATES OF AMERICA,

        -vs-

ALEXI SAENZ,

           Defendant.

---------------------------------------------------X

16-CR-403 (GRB)

NOTICE OF MOTION

      PLEASE TAKE NOTICE that, based on the prior proceedings herein and the accompanying memorandum of law, Defendant Alexi Saenz moves this Court, pursuant to the Federal Rules of Criminal procedure, the Federal Rules of Evidence, local practice, *Brady v. Maryland*, 373 U.S. 83 (1983) and its progeny, and the Court's inherent authority to manage its caseload, including rigorously supervising the process of discovery and pretrial disclosure to ensure Alexi Saenz obtains a fair trial, for an order directing the government to produce discovery as outlined in the accompanying memorandum of law, and for such other relief as this Court deems appropriate.

Dated: Brooklyn, New York
      February 1, 2024

Respectfully submitted,

/s/ Natali Todd
NATALI TODD
Law Offices of Natali J.H. Todd
26 Court Street, Suite 413
Brooklyn, NY 11242
Tel.: 718-797-3055

/s/ Victor J. Abreu
/s/ Peter Williams
VICTOR J. ABREU
PETER WILLIAMS
Federal Community Defender Office
for the Eastern District of Pennsylvania
601 Walnut Street, Suite 540 West
Philadelphia, PA 19106
Tel.: 215-928-1100

*Counsel for Alexi Saenz*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X

UNITED STATES OF AMERICA,

                                           16-CR-403 (GRB)

       -vs.-

ALEXI SAENZ,

       Defendant.
----------------------------------------------------X


## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO COMPEL DISCOVERY


Natali Todd, Esq.
Victor J. Abreu, Esq.
Peter Williams, Esq.

*Counsel for Alexi Saenz*

**INTRODUCTION**

Alexi Saenz is charged with numerous racketeering offenses and related charges, including violent crimes in aid of racketeering, arson, and narcotics conspiracy in the operative S8 indictment which charges fifty-four counts of criminal violations. Alexi Saenz is charged in forty of the fifty-four counts. The government has alleged that La Mara Salvatrucha ("MS-13") is an enterprise and a transnational criminal organization with members located throughout Long Island, Queens, and elsewhere, and that Alexi Saenz and numerous named and un-named co-conspirators are MS-13 members and participated in the activities of the enterprise. The government formally served notice of its intention to seek the death penalty against Alexi Saenz on July 15, 2020 (Doc. 1429), and following counsel's written request for the withdrawal of the notice of intent to seek death, the government agreed and filed a formal withdrawal notice on November 10, 2023 (Doc. 2433).

Counsel have made multiple informal requests for discovery during the pendency of this case, and have received some discovery on a rolling basis from the government. In addition, following defendant's formal discovery motion which was filed on September 8, 2022 (Doc. 2134), the government made additional disclosures in response but much discovery is still outstanding. *See* Gov't Discovery Response (Doc. 2241).

In the defense's review of the discovery to date, and in preparation for what will undoubtedly be a lengthy and complex trial (the government estimates a trial duration of 3-4 months), and in light of the exposure to multiple life sentences should Alexi Saenz be found guilty of the most serious charges, it is critical that the defense promptly receive the identified missing discovery that is material to Mr. Saenz's defense. Although the undersigned believe the

1

government has endeavored in good faith to provide some of the requested materials, the defense has not received information and materials to which Alexi Saenz is entitled and which are material to his defense and timely preparation for trial. The Court has adopted the parties' Joint Scheduling Order (Doc. 2444 and 2459) and the preparation of certain motions is dependent on the government's compliance with its discovery obligations.

The defense seeks an Order from the Court requiring the government to produce the discovery listed below, which includes disclosures from the Suffolk County Police Department ("SCPD"), Nassau County law enforcement, and federal law enforcement. The defense makes these discovery requests based on Alexi Saenz's right to due process; his Sixth Amendment right to counsel and to confront the witnesses against him, consistent with Rules 12(b)(4), 16, and 17(c) of the Federal Rules of Criminal Procedure; Rule 404(b) of the Federal Rules of Evidence; *Brady v. Maryland*, 373 U.S. 83 (1963); and *Giglio v. United States*, 405 U.S. 150 (1972). The defense respectfully requests that the Court exercise its authority to manage the substance and timing of pre-trial discovery to ensure fundamental fairness.

## THE DEFENDANT'S DISCOVERY REQUESTS

## I.    General Request Relating to Forensic Analyses

The defense makes the following requests for all forensic analyses conducted in this case. More case-specific requests are made in Section III, *infra*. Pursuant to Federal Rule of Criminal Procedure 16(a)(1)(F), the defense seeks the full case file for all results or reports of any scientific tests or examinations within the government's custody or control that are either material to preparing the defense or to be used as evidence in the government's case-in-chief or in rebuttal. The requested discovery includes, but is not limited to: autopsy reports; narcotics

analyses or scientific tests performed on drugs; bench notes; ballistics reports; handwriting, hair, fingerprint, or voice analyses or comparisons; computer forensic reports; ATF trace reports on any firearm related to the charges; the complete DNA tests and any underlying data used in any DNA tests, firearm and/or toolmark tests, or other forensic examinations.

In addition, the defense makes the following more specific requests as to all analyses conducted by the Biological Science Unit ("BSU") and the ballistics unit of the Suffolk County Medical Examiner's Office ("SCMEO").

### A.      Requests Relating to the BSU

The government has provided case files for a number of DNA tests conducted by the BSU in connection with this case. In addition to the case files for the individual investigations, the defense also requests the production of the following materials with respect to all of the DNA and serology analyses conducted by the BSU:

(1)      the complete BSU case file for each case or confirmation that counsel for Mr. Saenz has received the complete file in prior submissions;

(2)      all electronic data files generated or relied on by the BSU in connection with DNA analyses;

(3)      all protocols, standard operating procedures, and interpretation guidelines relied on by the BSU in connection with the DNA analyses conducted in connection with this case;

(4)      all validity studies and the underlying data for those studies in the possession of the BSU that were conducted prior to or up until the time of testing for the DNA testing kits used in this case;

(5)      all licenses and certifications currently held by the SCMEO and held at the time each test was conducted;

(6)      complete proficiency files (not merely summaries) prior to and through the time of testing of all DNA analysts involved in the testing, interpretation or technical

3

review of the case files prior to and through the time of testing;

(7)    curriculum vitaes for all DNA analysts involved in the testing, interpretation, or clinical review of the case files prior to and through the time of testing;

(8)    all auditing and quality assurance documents for the BSU prior to and up to the time of testing;

(9)    any electronic or physical materials documenting communications relating to the forensic analyses in this case;

(10)    all logs documenting contamination, or unexpected findings and corrective actions taken by the BSU prior to and up to the time of testing; and

(11)    maintenance and repair logs of all analytical pieces of equipment maintained by the BSU that were used to maintain and test the materials in this case.

**B.    Requests Relating to Ballistics Analyses**

In addition to the specific case information requested below, the defense requests the following materials for each of the alleged offenses, charged and uncharged, and for every gun-related offense the government intends to introduce in support of any of the charged and uncharged allegations in this case:

(1)    The complete SCMEO file in support of the examiner's conclusions, including any additional reports, bench notes and written summaries;

(2)    The complete firearms and toolmark identification files for any other law enforcement agency involved in consultation, review, investigation, or testing of firearms and toolmark evidence in this matter including, but not limited to, the Federal Bureau of Investigation, the Nassau and/or Suffolk County Police Departments, and Nassau and/or Suffolk County Medical Examiner's Offices;

(3)    The results of any testing that was not reported in the previously provided reports;

(4)    Clear, and in color if available, copies of all photographs, video, recordings, sketches, images, or impressions created as part of the examination process;

(5)    Documentation of the chain of custody for collected, submitted, and tested evidence;

4

(6)     Any reference materials used by the examiner during the examination, including technical manuals, protocols, treatises, scientific papers, quality assurance manuals, standards, interpretational guidelines, and any other resources relied on or available to the examiner;

(7)     The names of any devices, equipment, software, or computer programs used and relied on by the examiner while conducting any testing;

(8)     A copy of each examiner's curriculum vitae; and

(9)     Copies of all, current and at the time of testing, firearms and toolmark licenses, accreditations, and proficiency testing results for the SCMEO and any other law enforcement agency involved in consultation, review, investigation, or testing of firearms and toolmark evidence in this matter.

## C.     Requests Relating to Uncharged Offenses

The government has also disclosed documents relating to multiple uncharged offenses. *See, e.g.*, Government's 10/7/16 Discovery Letter (Doc. 26) (providing discovery regarding the murders of Derrick Mayes, Keenan Russell, Jose Lainez-Murcia, and Jonathan Cardona-Hernandez). None of these offenses are referenced in the charged indictment and the government has not offered the relevance, if any, of these uncharged offenses to Alexi Saenz. *See* Eighth Superseding Indictment (Doc. 2270). To the extent the government intends to rely on any of these uncharged offenses in its case-in-chief or in rebuttal, Mr. Saenz is entitled to full discovery.

Accordingly, consistent with Mr. Saenz's right to due process; his Sixth Amendment right to counsel and to confront the witnesses against him; Rules 12(b)(4), 16, and 17(c) of the Federal Rules of Criminal Procedure; Rule 404(b) of the Federal Rules of Evidence; *Brady*, 373 U.S. 83; and *Giglio*, 405 U.S. 150, all requests for discovery herein, if not yet provided, are reasserted in relation to all uncharged allegations.

### D.      Federal Testing and Examination

The defense has received numerous chain of custody reports, vouchers, lab reports for testing results of numerous evidentiary items alleged to be part of this case. The defense requests an order directing the government to identify any tests (*i.e.*, DNA, fingerprints, hair sample, ballistics), linking Alexi Saenz to any of the charged crimes. And if there are any such reports that link him to any of the charged crimes, the defense requests such reports.

## II.      Request for Unredacted Police Reports and Interview Notes.

Throughout the discovery process, the government has provided a number of heavily redacted police reports and interview notes. These redactions exclude both names and contact information for witnesses and the substance of the interviews. (*See* Doc. 2134 at 11, 13-14, 17-18, 20-21, 23-25, 27-29.) In his 2022 Discovery Motion, Mr. Saenz requested unredacted versions of those notes. The government declined to provide them. Relying on *United States v. Barrett*, 153 F. Supp. 3d 552, 575 (E.D.N.Y. 2015) and *United States v. Bejasa*, 904 F.2d 137 (2d Cir. 1990), the government maintained that this material "was and is being produced on a discretionary basis" and in advance of the disclosure deadlines under 18 U.S.C. § 3500, that the material was properly redacted to "protect the identities of victims and witnesses, including their contact information," and that "in more limited circumstances" the redactions were made to exclude "information that is not relevant to the investigation." (Doc. 2241 at 4, 7-8, 11-12, 14, 17, 19-23.)

To avoid repetition, the defense addresses this argument collectively now and requests that the government be compelled to provide unredacted versions of all previously provided notes and police reports. The government's primary argument in support of the majority of the

redactions is that it is appropriate to redact the identities and contact information. While Rule 16 does not require the disclosure of witness information, "the general discretion of district courts to compel the government to identify its witnesses is acknowledged widely." *United States v. Cannone*, 528 F.3d 296, 299 (2d Cir. 1975). Indeed, *Barrett* and *Bejasa*, which are relied on by the government to justify withholding such information, confirm the Court's discretion to compel the production of the identity of the government's witnesses. *Barrett*, 153 F. Supp. 3d at 575-76 ("federal courts have long held that Rule 16 does not preclude the exercise of their inherent authority to require pretrial disclosure of witness identities where such disclosure is justified by the circumstances of the particular case."); *Bejasa*, 904 F.2d at 139 (while Rule 16 did not require the government to disclose the names and contact information for their witnesses in general, district courts had the authority to compel disclosure of the identity of government witnesses).

Court-ordered disclosure of witness identities and contact information is warranted here. Mr. Saenz is charged in forty counts of a fifty-four-count indictment involving sprawling RICO allegations that include, inter alia, eight murders, three attempted murders, drug distribution, an arson, and conspiracy to commit all of the above crimes. Discovery in this case encompasses at least 20,000 pages and hours of video and audio recordings. Much of the audio records are in Spanish and must be translated before they can be reviewed by the entire team. Furthermore, this Court has set a firm trial date of September 3, 2024. Investigating this case and preparing it for trial has been and will continue to be a gargantuan task. If the identities of the witnesses in question are not disclosed well in advance of trial, the defense will be unable to effectively investigate this case and Mr. Saenz's Sixth Amendment rights will be violated.

Neither *Barrett* nor *Bejasa*, upon which the government relies, stand for the proposition that the government can categorically refrain from disclosing witness' identities. In *Barrett*, the district court *granted* the defense's request for disclosure of witness information. 135 F. Supp. 3d at 575-76. And in *Bejasa,* the government *had disclosed* the identities of its witnesses, but the witnesses had chosen  through the prosecutor  "not to be interviewed by the defense," and the defense sought to compel the production of their addresses anyway. 904 F.2d at 139-40. Because Bejasa knew the witnesses and knew or could have easily discovered their addresses, the government's refusal to provide these addresses did not constitute error. *Id.* Here, in contrast to *Bejasa*, the government has not disclosed the witnesses' identities to the defense, and their addresses are not known or easily discoverable by the defense.

Furthermore, for certain statements, *Brady* and Rule 16 mandate the production of the witness' identities. The defense is entitled under *Brady* to any materials in the government's possession that are favorable to the accused. *United States v. Bagley*, 473 U.S. 667, 676 (1985). Moreover, the government is required to disclose all evidence that is favorable to the accused "in time for its effective use at trial." *United States v. Coppa*, 267 F.3d 132, 135 (2d Cir. 2001). The defense is similarly entitled to any documents and physical items that would be material to Mr. Saenz's defense under Fed. Crim. P. 16(a)(1)(E). The burden on the defense to prove materiality is "not high" under Rule 16(a)(1)(E). *United States v. Mohamed*, 148 F. Supp. 3d 232, 243 (E.D.N.Y. 2015). The defendant need only show that there is "some indication" that disclosure of the requested evidence would enable the defense to "significantly alter the quantum of proof in his favor." *United States v. Maniktala*, 934 F.3d 25, 28 (2d Cir. 1991). Some portions of the withheld discovery relate to reports that individuals other than Mr. Saenz were responsible for

particular crimes. *See infra* section III. Because the identities and contact information for the individuals making these reports and the additional documentation requested below could  if supported by investigation  enable the defense to present evidence that some individuals other than Mr. Saenz committed some of the crimes of which he was accused, the requested information and documents are both favorable to the defense and satisfy Rule 16(a)(1)(E).

**III.    Crime-Specific Requests**

**A.    Missing Disclosures Relating to the Michael Johnson Murder (1/28/2016)**

The discovery provided to date excludes numerous missing records that have not been provided in response to our disclosure requests. The defense reiterates its requests for the missing documents.

**a.    Scientific/Forensic Testing**

Regarding the DNA testing that yielded profiles of four unknown individuals without a match, the defense requests that if the government intends to retest any prior items with inconclusive results, or conduct trace evidence testing of evidence collected by the Crime Lab, the Court set a deadline before which such retesting should be done and the information disclosed to counsel to avoid any further delays or surprise at trial.

**b.    Electronic Evidence**

The defense reasserts its request for a forensic image and any records related to the cell phone that was recovered from the victim's pocket at the time of the crime. 16277.[1] The government previously refused disclosure on the grounds that it does not intend to disclose the

---

[1]Bates numbers are included to assist the government in identifying the requested materials.

contents of any victims' phone, and in this case, where it knows of no communications with Alexi Saenz or information related to the crimes with which he is charged. (*See* Doc. 2241 at 4, ¶2.) Given that Mr. Saenz is charged in a racketeering enterprise, specific communications with the victims are relevant, particularly if there are communications with other members of the racketeering conspiracy. The defense requests an order directing the government to provide all documents and forensic imaging concerning the referenced cell phone.

### c.    Police Notes and Reports

The defense requests the unredacted notes of the detectives. 16290-16306; 16307-16323; 16271-16289. It does not object to the redaction of the family members' personal information but it requests the identity (i.e., mother, sister, brother, etc.) of the individual providing information. In addition, the reports provided by the government are heavily redacted and appear to be redacted well beyond personal information/addresses, such that they are meaningless.

### B.    Missing Disclosures Relating to the Oscar Acosta Murder (4/29/2016)

### a.    Scientific/Forensic Testing

The government has represented that the item referenced in Bates No. 14888, which yielded the inconclusive DNA results, has not been retested, and that the items referenced in Bates Nos. 14886-87 were never tested. If the government intends to retest any prior items with inconclusive results, or conduct testing on any items not previously tested, the Court should set a deadline when such retesting should be done to avoid any further delays or surprise at trial.

### b.    Electronic Evidence

The defense reasserts its request for a forensic image and any records related to the LG cell phone that was used by the victim to contact friends on Facebook messenger. 16726. The

government previously refused disclosure on the grounds that they do not intend to disclose the contents of any victim's phone, and in this case, where they know of no communications with either Alexi or Jairo Saenz or information related to the crimes with which they are charged. *(See* Doc. 2241 at 6, ¶2.)* As discussed above, since Mr. Saenz is charged in a racketeering enterprise, specific communications with the victim are relevant, particularly if there are communications with other members of the racketeering conspiracy. The defense requests an order directing the government to provide all documents and forensic imaging concerning the referenced cell phone.

The government has also refused to disclose the forensic image of the HTC cell phone of which the contents were extracted (17016), citing, inter alia, safety reasons. The current protective order obviates these concerns. (Doc. 2285, Doc. 2286.)

### c.    Police Notes and Reports

A police report at 17013 references a wallet found at the Acosta crime scene in apparent connection with an assault. In 2022, the government represented that this assault was unrelated to the murder of Acosta. (Doc. 2241 at 8, ¶6). If the government considers this assault to be related to the enterprise, then the defense continues to seek information relating to it.



C.     **Missing Disclosures Relating to the John Doe #1 and 2 Attempted Murders ("Apple Street") (7/18/2016)**

The government has disclosed the July 26, 2016 "Firearms Report" by Roy D. Sineo, a portion of the SCMEO ballistics case file, and a January 23, 2017 "Supplemental Firearm Report" by Wesley Krupp. 17145-17163. According to Mr. Krupp's supplemental report, "[m]icroscopic examination and comparison of questioned expended casings submitted under cc#17-47173, Lab#17-00176, as items# 01.02 and 01.03, with another expended casing being held as part of the 'Open Case File' under cc#16-431481, Lab#16-02467, as item #01, revealed sufficient agreement of individual characteristics to conclude that they had been fired in the same unknown weapon." 17145. The government has not produced any discovery related to the comparison case referenced above, cc#17-47173, Lab#17-00176. The defense requests all discovery related to this matter. Additionally, copies of photographs provided in the ballistics case file are of too poor a quality to assess the examiners' observations and conclusions, or to be used by a defense expert. 17147-17149, 17159. The defense requests clear copies of the photographs and worksheets and access to the original testing materials.

In addition to the requests set forth above regarding all forensic firearms and toolmark examinations, for each of the July 26, 2016 and January 3, 2017 examinations the defense requests the verification worksheet, review checklist, class characteristic examination of fired cartridge cases worksheets, examiner's worksheet, and Suffolk County Police laboratory case conferral sheets.

b.     **Police Notes and Reports**

The fourteen pages of heavily redacted notes, including full-page redactions (17186-

12

17199), appear to go well beyond names and addresses of victims and witnesses providing information about the incident. For the reasons set forth at section II, *supra*, the defense requests that the government provide unredacted documents.

The government produced a case file for CC# 16-460792, BS #18915-18949 to co-defendant Jairo Saenz. *See* Doc. 2241 at 12, ¶4. The defense requests an order directing the government to also provide a copy of the complete case file for CC# 16-460792 to Alexi Saenz.

### D.   Missing Disclosures Relating to the Rival Gang Members Attempted Murders ("Lukens Avenue") (8/10/2016)

#### a.   Scientific/Forensic Testing

The government has disclosed the April 11, 2014 "Firearms Report" by Charles S. Hopkins and the October 19, 2021 "Corrected Firearms Report" by Roy D. Sineo. 17228-17238. The "Corrected" Report states that "[t]he correction to the report for Charles Hopkins dated 04/11/2017 reflects the change in the 'Results and Conclusions' section from 'right' twist to 'left' twist." 17228. The defense requests all additional reports, notes, memos, or recordings, by or between examiners, or any other SCMEO employee, law enforcement, or prosecutorial agency, regarding the change in "Results and Conclusions" set forth above.

In addition to the requests set forth above regarding all forensic firearms and toolmark examinations, for each of the April 11, 2017 and October 19, 2021 examinations, the defense requests the verification worksheets, review checklists, class characteristic examination of fired cartridge cases worksheets, microscopic comparison worksheets, examiner's worksheets, and Suffolk County Police laboratory case conferral sheets.

E.   **Missing Disclosures Relating to the Vehicle Arson ("Freeman Avenue") (9/12/2016)**

   a.   **Police Notes and Reports**

The defense requests the entire case files of the investigating detectives and the police files from the SCPD, including the unredacted copies of the detectives' notes and police reports which are excessively redacted, including redaction of offense locations, victims' names, and co-conspirators' names.

F.   **Missing Disclosures Relating to the Kayla Cuevas and Nisa Mickens Murders (9/13/2016)**

   a.   **Scientific/Forensic Testing**

The October 4, 2016 BSU report indicated that the DNA testing conducted on the broken handle of a baseball bat yielded inconclusive results. 14938. In its November 23, 2022 Response to the defense's Discovery Motion, the government represented that the broken baseball bat handle was not retested. (Doc. 2241 at 15.) If the government wishes to conduct any additional testing of this item, the defense requests that the testing be conducted and Mr. Saenz be provided with the results by a date certain reasonably in advance of trial.

The SCMEO's September 27, 2016 Crime Scene Processing report details five items that were recovered and submitted for testing in the BSU. 14940. The government indicated that those items had not been tested as of November 23, 2022. Doc. 2241 at 15. If the government wishes to conduct additional testing of these items, the defense requests that the testing be conducted and Mr. Saenz be provided with the results by a date certain reasonably in advance of trial.

The March 20, 2017 supplemental BSU report lists a number of items that were

14

"not examined." 17386. On November 23, 2022, the government confirmed that no testing had been conducted on these items. Doc. 2241 at 15. The defense requests an order directing the government to confirm that these items have still not been tested. If the government wishes to conduct additional testing of these items, the defense requests that the testing be conducted and Mr. Saenz be provided with the results by a date certain reasonably in advance of trial.

      **b.**      **Electronic Evidence**

Detectives' notes and a police report reference social media. *See* 17324, 17330-17331, 17335, and 17598. In response to the defense's 2022 discovery motion, the government provided a number of publicly available documents, but also indicated that it had not obtained search warrants for any social media accounts. Doc. 2241 at 16. To the extent the government has not already done so, the defense requests any social media evidence in the possession of the SCPD. Finally, the defense requests that a deadline of a date certain reasonably in advance of trial be imposed for the disclosure of any additional social media evidence.



███████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████

### c.    Police Notes and Reports

Prior to the 2022 discovery motion, the government had provided thirty-two heavily redacted pages of detectives' notes that were generated in connection with the Cuevas and Mickens murders. (Doc. 2134 at 23-24.) The defense requested that unredacted versions of these notes be provided. *Id.* The government declined to provide them. (Doc. 2241 at 17.) For the reasons set forth at section II, *supra*, the defense requests that the government be ordered to produce unredacted versions of these notes. Moreover, the interview notes contain reports of a number of potential suspects other than Mr. Saenz. (Doc. 2134 at 23-24.) Unredacted versions of these notes must be disclosed pursuant to *Brady*. *See* section II, *supra*.





### G.      Missing Disclosures Relating to the Javier Castillo Murder (10/10/2016)

#### a.      Electronic Evidence

The defense previously requested the cell tower records (the "tower dump") from the date of the crime. (Doc. 2134 at 25.) The government responded that it did not have those records in its possession. (Doc. 2241 at 20.) If the government wishes to present the "tower dump," at trial the defense requests that the government acquire and provide this information by a date certain reasonably in advance of trial.

#### b.      Police Notes and Reports

The defense has been provided with detectives' notes, which are heavily redacted. 17623-17632. The defense requested unredacted copies of these notes. (Doc. 2134 at 25.) The government declined to comply with this request. (Doc. 2241 at 19.) For the reasons set forth at section II, *supra*, the defense is entitled to the redacted material.

**H.     Missing Disclosures Relating to the Dewann Stacks Murder (10/13/2016)**

**a.     Scientific/Forensic Testing**

The BSU case file for this homicide indicates that some items yielded inconclusive results on DNA testing, and that several other items were reported as "not examined." 17845. Trace examination was requested for at least one item of evidence, but the defense has been provided with no record that an examination has been conducted. 17859. The government indicated in 2022 that the items with inconclusive results were not retested, the items listed as "not examined" had not since been examined, and there was no trace evidence report that was generated in connection with this case. (Doc. 2241 at 19.) The defense requests confirmation that the status of these three issues have not changed. If the government wishes to conduct any additional testing of the items in question, the defense requests that the testing be conducted and defense counsel be provided with the results by a date certain reasonably in advance of trial.

**b.     Electronic Evidence**

SCPD recovered a cell phone at the scene of the homicide, and received a cell phone from the decedent's brother. 17780, 17782, 17786, 17790. Both phones were submitted for analysis. 17786, 17790. As with the Mickens and Cuevas homicides, the government maintains that the contents of the phones do not relate to Mr. Saenz or this investigation, and has represented that it will not be disclosing the contents of the phones or related discovery. (Doc. 2241 at 20.) For the reasons set forth at section III(F)(b), *supra*, relating to decedents Mickens and Cuevas, the defense is entitled to review the contents of these phones. The defense requests that the government be compelled to produce them.

### c.     Police Notes and Reports

[REDACTED]

### I.     Missing Disclosures Relating to the Esteban Alvarado-Bonilla Murder (1/30/2017)

### a.     Scientific/Forensic Testing

In 2022, the defense noted that a BSU report for this homicide reflected the DNA profile of an unknown male individual, that the DNA testing of several items yielded inconclusive results, and that thirteen items listed as collected in the Crime Scene Processing Report were not

listed as received in the BSU report. (Doc. 2134 at 28.) In response to the defense's request for clarification on these issues, the government represented that there was still no match to the unknown DNA profile, the items yielding inconclusive results were not retested, and the thirteen items referred to in the Crime Scene Processing Report were not submitted for testing. (Doc. 2241 at 21-22.) The defense requests that any additional testing be conducted and Mr. Saenz be provided with the results by a date certain reasonably in advance of trial.

### b.     Police Notes and Reports.

The defense has been provided with interview notes generated by SCPD detectives, which are heavily redacted. (Doc. No. 2134 at 29.) For the reasons set forth in section II, *supra,* the defense requests unredacted copies.

### J.     Missing Disclosures Relating to the Marcus Bohannon Murder (9/5/16)

### a.     Scientific/Forensic Testing

The BSU file contains a DNA analysis reflecting DNA from someone other than the decedent in fingernail scrapings from the decedent's right hand, and that the DNA profile was submitted to the local and state DNA database for potential matches, and would remain on CODIS to check for potential matches. 19765, 19774. Additionally, the BSU file reflects an inconclusive result on the fingernail scrapings from the decedent's left hand. 19786. The defense requests any and all documents relating to these referrals that have not already been provided, including any potential matches to any of these databases. Furthermore, the defense requests that the government clarify if any additional testing has been conducted on the material recovered from the fingernails on the decedent's left hand.

The government disclosed the September 4, 2016 "Firearms Report" by Roy D. Sineo and

20

related noted from the SCMEO. 19714-19763. The government also produced the September 14, 2016 "Firearms Report" (19885-19886) and November 4, 2016 "Supplemental Firearms Report" by Mr. Sineo (19888-19889). According to Mr. Sineo's supplemental report, two of the examined casings in this matter were compared and determined to have been fired from the same weapon as ten casings and seven expended bullets recovered in another shooting, Nassau County P.D.# 2016-CR-336274, FBI# 281Q-NY-278532, SCCL Lab# 14-2955. 19888. The government, however, has not produced any discovery related to the other shooting referenced in Nassau County P.D.# 2016-CR-336274, FBI# 281Q-NY-278532, SCCL Lab# 14-2955. The defense requests all discovery related to this matter.

Additionally, copies of photographs provided in the ballistics "Microscopic Comparison Worksheets" in the case file are of too poor a quality to assess the examiners observations and conclusions, or for use by a defense expert. 19718-19721, 19734-19745. The defense requests clear copies of the photographs and worksheets and access to the original testing materials.

In addition to the requests set forth above regarding all forensic firearms and toolmark examinations, to the extent that the government has not yet done so, for each of the September 4, 2016, September 14, 2016, and November 4, 2016 examinations, the defense requests the verification worksheets, review checklists, class characteristic examination of fired cartridge cases worksheets, examiner's worksheets, and Suffolk County Police laboratory case conferral sheets.

█   ████

███████████████

██████████████████



23

IV.     **Federally Seized Evidence from 1619 Spur Drive and Several Vehicles**

A.     **Electronic Devices Seized from 1619 Spur Drive**

With respect to Device-2 (ZTE Cricket Grand X Max 2); Device-5 (Coolpad Model 3622A); Device-7 (Blackberry), the defense requests that the government explain whether the government attempted extraction and there was no content or whether the government was unable to extract the contents of the devices.

B.     **Electronic Devices Searched pursuant to the 5/2/18 warrant**

The defense requests a copy of the forensic extraction report in either Cellebrite or Oxygen of all electronic devices, with all of the accompanying metadata, for each device of Device-10, 11, 12, 13, 14 and 15, which were seized from the Spur Drive residence, and from co-conspirators charged in the indictment. In addition, this request encompasses the cross production of devices belonging to charged co-conspirators, cooperating defendants, and the victims of the charged crimes. This request is consistent with the government routinely disclosing the requested cross-production of co-conspirator's electronic devices as Rule 16 discovery in multi-defendant cases which charge RICO conspiracies involving various gangs, including MS-13, involving violent conduct, and sex trafficking cases with multiple victims. *See, e.g.*, *United States v. Saracay-Lopez*, 20 Cr. 228 (LDH); *United States v. Harrell*, 20 Cr. 239 (BMC); *United States v. Blanco*, 18 Cr. 609 (RJD); *United States v. Chen*, 22 Cr. 158 (ENV); *United States v. Ayala Pineda*, 21 Cr. 635 (JMA); and *United States v. Darius Sutton*, 20 Cr. 323 (AMD).

In its response to the defense's discovery requests for the forensic images of cell phones seized related to the charged offenses (Doc. 2134), the government indicated that they intend to provide the requested discovery for "(1) charged or uncharged co-conspirators, and (2) cooperating

defendants . . . [as well as] the relevant content (if any) of any and all electronic devices . . . belonging to victims and/or witnesses of the charged offenses, sufficiently in advance of trial pursuant to an appropriate protective order." (Doc. 2241, pg. 25 at §V. A.)

The defense requests an order directing the government to provide the following production of Electronically Stored Information (ESI):

(1)     Electronic documents converted from their native format into a picture/image. The electronic image files should be computer generated, as opposed to printed and then imaged. Each electronic image should be stamped with a unique Bates number;

(2)     Text from that original document is extracted or pulled out and stored without formatting in a generic format;

(3)     Metadata (i.e., information about that electronic document), depending upon the type of file converted and the tools or methodology used, that has been extracted and stored in an industry format. The metadata must include information about structural relationships between documents;

(4)     Load files that tie together the images, text, and metadata;

(5)     Native files with metadata must be produced in a similar fashion as noted in points 1-4 above;

(6)     Subpoenaed records from service providers (in the government's custody and control) in their native format without redactions, of all recovered devices for each murder and other charged violent conduct. The records, which should include information for all co-conspirators, witnesses and victims for the period of investigation of this case, should display the following information:

      a)      Subscriber names; user names and screen names;

      b)      all addresses including mailing addresses, residential addresses, businesses and email addresses;

      c)      local and long distance connection records; call detail records;

      d)      temporarily assigned network addresses (such as Internet Protocol IP addresses associated with those sessions);

e)   length of service (including start date) and types of service utilized;

f)   other subscriber numbers or identities (including registration Internet Protocol ("IP") address;

g)   billing records    source of payment; and

h)   information regarding the cell tower records and sectors through which communications were sent and received.

This is already a complex case. Counsel are also faced with the unusual challenge that the communications on the devices will be in Spanish. It is likely that counsel will engage in further investigation upon review of the contents of the devices, which will likely take an enormous amount of time. All of these reasons warrant disclosure.

The defense requests that the government produce an index of all of the devices seized during the course of the investigation of this case. To date, no index of the cell phones, tablets, computers, or other physically seized devices has been produced. Due to the voluminous and complex data these devices contain, the defense needs to know the universe of the number of seized devices, from who they were seized and where, and who the government associates to be the user. For each device the defense needs to know whether the government will be able to produce electronic images or if the devices will only be available for physical inspection.

## V.   Electronic Devices Seized at the Metropolitan Detention Center

The defense requests a forensic image of all devices seized and attributed to Alexi Saenz. For any device for which the government attempted an extraction of its contents but there was no content, or the government was unable to access the device, the government should so state.

## VI.   Additional Cross Production of Evidence Related to Co-Conspirators

The defense requests an order directing cross-production of the following information

related to co-conspirators:

    (1)       All jail calls;

    (2)       All prison emails;

    (3)       All subpoenaed returns from email providers;

    (4)       All subpoenaed returned for all social media accounts, including the public information of these accounts that is in the custody and control of the government; and

    (5)       Criminal Histories for all witnesses and cooperators.

## VII.   General Request for Device Index

The defense requests that the government be ordered to produce an index of all of the devices seized during the course of the investigation of this case. To date, no index of the cell phones, tablets, computers, or other physically seized devices has been produced. Due to the voluminous and complex data these devices contain, the defense needs to know the universe of seized devices, from whom they were seized, where they were seized, and who the government believes to be the user. The defense further requests that the government state whether it will be able to produce electronic images or if the devices will only be available for physical inspection.

## **CONCLUSION**

The defense respectfully reserves the right to request additional documents and information based upon additional disclosure by the government that are relevant and material to Mr. Saenz's defense. Given the age of the case and the scheduled trial date, the defense respectfully requests that the government be ordered to provide the requested documents and information by a date certain reasonably in advance of trial.

Respectfully submitted,

/s/ *Natali Todd*
NATALI TODD
VICTOR J. ABREU
PETER K. WILLIAMS

*Counsel for Alexi Saenz*

February 1, 2024

## <u>CERTIFICATE OF SERVICE</u>

I, Peter Williams, hereby certify that on this date I caused the foregoing to be served on the parties of record through the Court's electronic filing system.

/s/ Peter Williams<br>Peter Williams

Dated: February 1, 2024