UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

UNITED STATES OF AMERICA,

              -against-

ALEXI SAENZ, a/k/a "Blasty" and "Plaky,"
and JAIRO SAENZ, a/k/a "Funny," *et al.*

              Defendants.
--------------------------------------------------------------X

MEMORANDUM OF DECISION & ORDER

16-CR-403(GRB)

**GARY R. BROWN, United States District Judge**:

In this prosecution arising from alleged criminal activity by purported members and leaders of La Mara Salvatrucha (the "MS-13"), defendants Alexi Saenz and Jairo Saenz have filed several motions relating to discovery and similar matters, which were referred to Magistrate Judge Steven I. Locke for resolution. Defendants have filed objections to certain aspects of Judge Locke's determinations, which have been reviewed *de novo* by this Court.[1]

1. **Request for 12(b)(4) Disclosure, Statements of Confidential Informants, Cooperating Witnesses and Coconspirators and a Bill of Particulars.**

Defendants have objected to Judge Locke's resolution of their applications for several discovery devices, including 12(b)(4) disclosures, statements of certain witnesses and coconspirators and a bill of particulars. Judge Locke partially denied these requests, though making certain accommodations to ensure fairness, including, for example, the provision of a comprehensive exhibit list by July 23, 2024.

These objections involve arguments that are coextensive or largely overlap and hence will be treated together. For example, with respect to the bill of particulars, defendants claim

---

[1] In its response, the Government provides compelling authority suggesting that defendants' objections should be reviewed under a deferential, clearly erroneous standard. Out of an abundance of caution, though, the Court has conducted a *de novo* review of these matters.

1

that the operative Superseding Indictment (S-8) lacks sufficient detail to enable trial preparation, the filing of pretrial motions and the protection of their rights against double jeopardy. Docket Entry ("DE") 2466; DE 2472; DE 2501; DE 2521. Defendants argue that, without such disclosures, they would "be reduced to sifting through voluminous discovery to guess at what the charges against them might be." DE 2521 at 1. With regard to other discovery questions, the defense repeatedly prognosticates that the Government's commitment to provide 3500 material four weeks before trial will prove inadequate for their trial preparation needs. *See, e.g.*, DE 2519 at 5.

These requests must be viewed against the backdrop of this case. Filed in December 2022, the S-8 indictment, representing the ninth grand jury charging instrument filed herein, weighs in at 46 pages and 153 paragraphs. DE 2270. The framework set out in that document has been supplemented by years of discovery production and review, including repeated and significant intervention by the Court. *See, e.g.*, DE 853 (Court appointment of coordinating discovery attorney to assist defendants); DE 1229 (Court ordered production of certain video and records); DE 1555 (Court ordered production of certain BOP records); DE 1628 (Court Order dated March 5, 2021, of Judge Bianco providing laptop computer to Alexi Saenz to review of discovery); DE 1836 (description of some of the discovery provided); Electronic Order dated December 9, 2021 (Court excluding speedy trial period due to ongoing discovery with accompanying offer that "the Court will schedule status conference at counsel's request" should discovery problems emerge); DE 2004 (Official Transcript of October 12, 2021, conference in which the Court worked with counsel to resolve discovery issues); DE 2304 (joint discovery letter reflecting there "does not appear to be any outstanding discovery disputes" ). Defendants' arguments that they remain entirely ignorant of the charges ring hollow when viewed in context.

Paradoxically, counsel argues that discovery has been so voluminous that it warrants a bill of particulars or 12(b)(4)(B) disclosures to "streamline the process." DE 2516 at 6. Judge Locke found several factors undercut this argument, including the guidance provided by the Government which helped put the discovery in context, various submissions that developed the factual scenario, and the anticipated filing of an enterprise letter. To these considerations, this Court will add another: the extraordinary level of staffing which the defendants enjoy, an artifact of the period in which this case was death eligible, and the matter had been authorized as a capital case. Indeed, in recent months, the undersigned fielded an application for additional counsel from Alexi Saenz, who was already being represented by three attorneys plus a trial counsel, as well as a request by Jairo Saenz, then represented by two trial counsel, seeking an additional trial attorney. DE 2484; DE 2512. In support of his application, counsel for Jairo Saenz complained that the Government had staffed the case with "*four* federal prosecutors," while there were "*three* attorneys for Alexi." DE 2484 at 2. With this level of service, defendants are surely capable of managing the discovery provided in this case, and suggestions that they remain adrift on a sea of information lack credibility.

It should be noted that Judge Locke nonetheless granted defendants aspects of the relief they were seeking by directing that the identities of certain victims and co-conspirators be disclosed. Tr. 3/18/24 at 31-32; DE 2508. This should provide defendants with more detail as to the allegations, further undercutting the need for a bill of particulars and the additional disclosures requested. Thus, after conducting a fact-specific, review, this Court finds that the requests for a bill of particulars and additional disclosures are meritless, and overrules the objections to Judge Locke's determinations, which are hereby adopted.

2. **Objections related to Jury Pool Disclosure**

Defendants have sought discovery to investigate and litigate anticipated "fair-cross-section" motions under the Jury Service and Selection Act (JSSA), 28 U.S.C. § 1861, predicated on potential inequities in the representation of the relevant pools from which grand and petit jurors have been, and will be, drawn. Judge Locke ordered the production of data relating to the Master Jury Wheel (encompassing all grand and petit jurors) including county, zip code and the self-reported information regarding age and race, with identified subsets of that data from which the S-8 grand jury were, and the petit jurors will be drawn. Judge Locke denied requests as to the Qualified Wheel and the venires, including specific subsets relating to the S-2 through S-7 grand juries and did not specifically order the production of data provided by juror candidates concerning Latino and Hispanic origin.

As Judge DeArcy Hall noted:

> By way of background, the grand jury selection process in this district is managed by the Clerk of the Court. E.D.N.Y. Jury Selection Plan § 3 (available at https://img.nyed.uscourts.gov/files/local_rules/juryplan.pdf.) At the start of the process, names of potential grand jurors are "selected at random from the voter registration lists of all the counties within the Eastern District of New York supplemented by lists for these counties from the New York State Department of Motor Vehicles." *Id.* § 4. From these lists, the Clerk of Court establishes a master jury wheel composed of "the names of all persons randomly selected from the combined source lists of all the counties of the Eastern District." *Id.* § 5. The Clerk of Court then removes from the master jury wheel all persons deemed ineligible for, or exempt or excused from jury service, resulting in a qualified jury wheel. *Id.* § 11. Jury venires are selected at random from the qualified jury wheel to serve on grand juries. *Id.* § 13.

*United States v. Braxton*, No. 20-CR-237 (LDH), 2020 WL 6083649, at *3 (E.D.N.Y. Oct. 15, 2020). It should be noted that the EDNY's plan has been approved as JSSA compliant by the Second Circuit Judicial Council, most recently on February 9, 2023.

Under the JSSA, "a litigant has essentially an unqualified right to inspect jury lists."

4

*Test v. United States*, 420 U.S. 28, 30 (1975).  As held in *Braxton*:

> In this case, Defendant requires more than just the demographic information relating to the master jury wheel. In this district, the jury selection process does not stop at the creation of a master jury wheel. Grand jurors are summoned only after the Clerk of Court deems them eligible and not otherwise exempt or excused from service, and places them in the qualified jury wheel. These processes impact, and potentially infect, the grand jury selection process, the visibility into which is necessary for a defendant to determine whether his rights under the JSSA have been impaired. Indeed, courts in this district have similarly found that defendants are entitled to records beyond those detailing the demographics of the jurors included in the master jury wheel. *See United States v. Corbett et al*., 20-cr-213 (KAM) (E.D.N.Y. Aug. 21, 2020), at 7–8, ECF No. 85 ("The court ... finds that the Master Jury Wheel provides both the most expansive and the least specific information upon which to determine if the Eastern District's current grand jury procedures comply with the JSSA." ); *United States v. Shader*, 20-CR-202, 2020 WL 4158059, at *4 (E.D.N.Y. July 17, 2020) (granting access to the demographics of the individuals listed in the source lists [the voter registration list and the New York State Department of Motor Vehicles list] and in the Master Jury Wheel from which the Grand Jury was selected).

*Braxton*, 2020 WL 6083649, at *4.  As applied here, this would encompass the information relating not only to the Master Wheel, but also to the Qualified Jury Wheels from which the S-8 grand jury was drawn and the petit jury in this case will be drawn.  Information relating to a particular venire is not subject to discovery, as "the Sixth Amendment guarantees the *opportunity* for a representative jury venire, not a representative venire itself." *United States v. Jackman*, 46 F.3d 1240, 1244 (2d Cir. 1995); *see also Braxton*, 2020 WL 6083649, at *4.

To the extent Judge Locke's order can be read as excluding data regarding the Qualified Jury Wheels, the Court hereby clarifies that the data provided shall include such information.[2] Moreover, Judge Locke correctly found that information relating to the grand juries that returned the S-2 through S-7 indictments is entirely irrelevant; defendants' theory that the determinations of the grand jury that returned the operative S-8 indictment might have been influenced by

---

[2] To be clear, the Qualified Jury Wheel represents a snapshot of a dynamic process; the Clerk may afford defense counsel access to the present Qualified Jury Wheel, which will be different from, though a reasonable simulacrum of, the pool that will be employed for jury selection in September 2024.

5

earlier determinations is undercut by that group's obligation to make an independent finding of probable cause regarding the indictment it returned. *See United States v. Gussie*, 51 F.4th 535, 539 (3d Cir. 2022) (superseding indictment by separated grand jury "neutralized the taint" of earlier charging instrument voted by grand jury infected by a biased grand juror)

Finally, in an unscheduled reply, counsel for defendants argue that "the magistrate judge's order does not compel the production of data on Hispanic or Latino ethnicity or gender of the Master Jury Wheels," and "prevents the defendants from investigating underrepresentation in these two areas." DE 2536-1. That assertion represents a misunderstanding of the data that is available. In a letter to counsel, the Clerk of the Court has already provided information relating to racial identification by jury candidates in their qualification forms. The qualification form also asks a single "yes/no" question as to whether that candidate identifies as Latino or Hispanic, and the information ordered by Judge Locke will be supplemented with this data. However, to the extent counsel demands data regarding prospective Latino jurors *versus* prospective Hispanic jurors, such records do not exist. The provisions of the statute "plainly give a defendant access only to records and papers already in existence," *United States v. Miller*, 116 F.3d 641, 658 (2d Cir. 1997), and the records are unavailable and thus not required.

Therefore, the jury disclosure information ordered by Judge Locke will be supplemented by the following: (1) information regarding the Qualified Jury Wheel for the grand jury that returned the S-8 indictment; (2) information concerning the Qualified Jury Wheel in its present form (in anticipation of the September 2024 jury selection) and (3) data received in response to Question 9 of the juror questionnaire relating to Hispanic/Latino self-identification by prospective candidates. Defendants' objections are otherwise overruled.

**SO ORDERED**

Dated: Central Islip, New York
April 30, 2024

/s/ Gary R. Brown
GARY R. BROWN
United States District Judge