UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
...............................................................................X

UNITED STATES OF AMERICA,

      -against-

JAIRO SAENZ, a/k/a "Funny," *et al.*

             Defendant.

...............................................................................X

**ORDER REGARDING
TRIAL STAFFING
REQUESTS RE: JAIRO
SAENZ**

16-CR-403(GRB)

FILED
CLERK

1:43 pm, Jun 04, 2024

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**APPEARANCES:**

*Attorneys for Jairo Saenz:*

Jacqueline K. Walsh, Esq.
Walsh & Larranaga
140 Lakeside Ave., #A-338
Seattle, WA 98122

Eric K. Klein, Esq.
Johnson & Klein, PLLC
5398 Manhattan Circle
Boulder, CO 80303

Monica Foster, Esq.
Executive Director
Indiana Federal Community Defenders, LLC
111 Monument Circle, Suite 3200
Indianapolis, IN 46204

**GARY R. BROWN, United States District Judge**:

      In this prosecution arising from alleged criminal activity by purported members and leaders of La Mara Salvatrucha (the "MS-13"), defendant Jairo Saenz (along with a co-defendant) is scheduled for trial in September 2024.  Before the Court for approval is an "up-to-trial" budget for two counsel, Jacqueline Walsh, Esq. and Eric Klein, Esq., two of the three attorneys currently

participating in the representation of defendant Jairo Saenz, as well as additional information obtained from counsel concerning the costs anticipated with respect to trial.  Because Ms. Walsh and Mr. Klein, both of whom are being reimbursed through the disbursement of CJA funds, are located, respectively, in Seattle, Washington and Chicago, Illinois, the travel costs, including attorney travel time, are anticipated to add in excess of $100,000 to the costs of this case.  Given the fact that, since the deauthorization by the Attorney General which led to withdrawal of the Notice of Intent to Seek Death, Jairo Saenz is no longer entitled as of right to the assistance of learned counsel, the Court must modify the request, and directs that Ms. Walsh and Mr. Klein be relieved from further participation in this matter following the oral argument of pending motions on July 9, 2024.  Recognizing the complexities of the case, however, the Court will appoint an additional attorney, to wit, a local CJA attorney (whose participation would not result in such extraordinary travel expenditures) to assist in the defense and trial.

**Background**

On October 16, 2019, a grand jury sitting in this district returned a 75-page, 89-count Seventh Superseding Indictment charging Alexi Saenz and Jairo Saenz (together the "Saenz defendants" or "Saenz brothers"), along with 24 other individuals, with criminal acts on behalf of the MS-13.  Docket Entry ("DE") 1163.  Specifically, the Seventh Superseding Indictment charged the Saenz brothers together in numerous counts, including capital offenses relating to the deaths of seven individuals.  *See* DE 1163 (Racketeering Acts Nos. 3, 4, 8, 11, 23, 24, 25 & 26).  On July 15 and November 20, 2020, the Government filed Notices of Intent to Seek the Death Penalty against Alexi Saenz and Jairo Saenz, respectively, following authorization by the former Attorney General.  DE 1429 (as to Alexi Saenz); DE 1539 (as to Jairo Saenz).  On December 22, 2022, the

2

Government filed an Eighth Superseding Indictment which became the relevant charging instrument and included an additional homicide charge against Alexi Saenz.  DE 2270.

**Representation of Jairo Saenz**

By 2022, Jairo Saenz was represented by three attorneys: Kelley Sharkey, Gary Villanueva and Beverly Van Ness.  On July 8, 2022, those attorneys filed a letter requesting the appointment of Ms. Walsh as a *second* learned counsel, arguing that such appointment was appropriate "where a capital trial appears highly likely."  DE 2093 at 2.  The Court denied the request "without prejudice to renewal following a determination by the government regarding the pending application for reconsideration of the death request."  Electronic Order dated July 12, 2022.  Counsel moved for reconsideration, asserting that "[w]e urgently need Ms. Walsh's help to compile a strong deauthorization request."  DE 2110 at 2-3.  The application specifically lauded Ms. Walsh's "mental health expertise" and "substantial and successful experience with drafting and presenting deauthorization submissions to the Capital Case Committee in Washington."  *Id.* On the basis of these arguments, on August 8, 2022, this Court approved Ms. Walsh as an additional learned counsel to the case to assist in the representation of Jairo Saenz.  Electronic Order dated Aug. 8, 2022.

By letter dated December 29, 2022, Jairo Saenz—through Ms. Walsh—requested that the three other attorneys on the matter be relieved, and that Monica Foster, Executive Director and Chief of the Indiana Federal Community Defenders, be appointed in their place.  DE 2283.  In that application, Ms. Foster's *curriculum vitae* was presented to the Court, which including, among other notable experience, the fact that she had "[s]uccessfully litigated lengthy death penalty jury trials to life verdicts."  DE 2283 at 5.  The Court granted the application to substitute Ms. Foster in place of then-existing lead counsel, specifically noting that "this accommodation is being made

3

because of the availability of highly qualified substitute counsel." Electronic Order dated Jan. 5, 2023.

The defendant's petition to deauthorize the case was granted by the Attorney General on November 10, 2023, and the Government moved to withdraw the Notice of Intent to Seek Death Penalty.  DE 2433.  That motion was granted on November 16, 2023.   At a Court conference on November 30, 2023, the Court raised the issue of continued participation of learned counsel in the case, noting:

> As of today, [ ] it's official that the Government is not authorizing the seeking of the death penalty[ ].  What does that mean?  That means a radical shift in, potentially, in the staffing on the defense side.  [T]he question of whether [learned] counsel remains on the case and how long, the Court has to grapple with that.  That's not a thing I can do at this point.  This has been a very long road and if you were to say to me look, we're trying to work something out, we're close to things.  We think there [are] some aspects, some reasons, to keep learn[ed] counsel on for a limited period going forward, I can consider that.

DE 2448 at 16-17.  In the Minute Entry Order from that proceeding, the Court indicated that, if necessary, defense counsel should submit an "ex-parte letter [ ] regarding learned counsel's future retention."  DE 2439; *see also* DE 2448 at 17-18.

Ms. Foster, in a responsive letter, requested that both she and Ms. Walsh continue to represent the defendant.  DE 2440.  In advocating for this accommodation, Ms. Foster represented that "*both counsel* have built rapport with Mr. [Jairo] Saenz and come to understand his cognitive challenges," and noted that "he wishes for *both counsel* to remain as his counsel of choice through the conclusion of this case."  *Id.* at 3 (emphasis added).  Though the defendant did not have the right to continued representation by learned counsel, to avoid disruption, and ensure sufficient staffing for completion of discovery and pre-trial motion practice to protect the defendant's rights, the Court permitted representation to continue.  Electronic Order dated Dec. 12, 2023.

On February 26, 2024, Ms. Foster filed a letter requesting "the CJA appointment of additional qualified counsel for the limited purpose of assisting us in our continued investigation, and the legal and factual development of legal issues in this case."  DE 2484 at 1.  Specifically, Ms. Foster sought the appointment of Eric Klein "to help us prepare, argue and litigate motions pre-trial."  *Id.*[1]  Ms. Foster further explained that Mr. Klein's appointment would result in cost savings.  *Id.* at 3.  The Court issued the following order:

> Given the extraordinary sums expended on this matter, as well as the accommodations afforded to defendant, including the continued provision of learned counsel, the court is reluctant to provide additional representation.  At the same time counsel makes a compelling economic argument.  The application to appoint Eric Klein is hence granted subject to submission and approval of a budget.

Electronic Order dated Mar. 5, 2024.

The aforementioned budget is now before the Court in the form of a series of "NON-CAPITAL MEGA-CASE – CASE MANAGEMENT AND BUDGET FORMS."[2]  Counsel has provided an estimate for the costs to be incurred by both Ms. Walsh and Mr. Klein pre-trial.  Counsel seeks a total of $286,692 for hours for both attorneys, as well as an additional $45,408 representing travel time for both counsel.  The budget document does not provide the costs of travel expenses, but is limited to attorney travel time.

On May 24, the Court issued an order providing in relevant part:

> ORDER as to Alexi Saenz, Jairo Saenz. Currently before the Court for review is an interim or up-to-trial CJA budget for defendant Jairo Saenz, which covers the period from approximately May 2024 through September 2024. [ ] In order to assist the Court in its review, counsel for Alexi Saenz is directed to submit its up to trial budget, including all counsel, travel and related costs, inclusive of all counsel expected to work on this matter.  Counsel for Jairo Saenz should feel free to

---

[1] Much of that work has now been completed: between April and early May 2024 counsel for defendants jointly filed nearly two dozen pre-trial motions and applications, consisting of approximately 449 pages of briefing.  *See* DEs 2530, 2531, 2532, 2533, 2534, 2540, 2541, 2543, 2544, 2545, 2547, 2548, 2549, 2552, 2553, 2554, 2555, 2558, 2559, 2560 and 2561.  Those motions will be fully briefed by and argued on July 9, 2024.

[2] To avoid disclosure of defense strategies, these forms are being filed separately under seal.

supplement its submission with any additional information that should reasonably be presented.  Along with those submissions, counsel for both defendants are directed to identify all attorneys assigned and/or involved in this matter, and advise the court as to whether each attorney:

1.  was initially appointed or assigned to this case as learned counsel, lead counsel or some other designation;

2.  is death-qualified;

3.  is expected to appear in court at the trial of this matter;

4.  is being compensated via CJA funds, or other funding method;

5.  will incur travel and lodging costs, and the source of funding for such costs.

Counsel should also advise as to which attorney has been designated the lead attorney for each defendant, as well as any further information that counsel believes may assist the Court in its review.

Electronic Order dated May 24, 2024.  In a supplemental order, the Court directed that counsel "should also provide the Court with a budget for the costs of trial, containing the same information for the four-month trial scheduled to begin in September 2024."  Supplemental Electronic Order dated May 24, 2024.

By letter response filed on May 30, 2024, Ms. Foster sets forth some guideposts for the projected costs in this matter through trial. DE 2579.[3]  The inverse of the earlier budget document, the letter outlines some travel costs that defense expects to incur for Ms. Walsh and Mr. Klein to and through trial, but fails to estimate the attorney-travel time that would be associated with such travel.  Out-of-pocket costs alone include pre-trial sums of approximately $9,000 for Ms. Walsh and nearly $7,000 for Mr. Klein.  *Id.* at 4.  For the four months of trial, Ms. Walsh expects to incur

---

[3] In her response, Ms. Foster states that "[n]o local counsel or lead counsel remained on the case after the Court removed all three of Mr. Saenz's prior CJA counsel," and asserts that "there is no 'lead attorney' on this case." DE 2579 at 2.  This is incorrect.  As this Court appointed Ms. Walsh only as learned counsel, that remains her authorized role.  In substituting for the then-existing lead counsel, Ms. Foster assumed the role of lead or trial counsel in this matter.

costs of $10,000 for a rental car and per diem of more than $6,000. *Id.* While no figure is provided concerning the associated attorney travel time costs, extrapolating from the Mega Case Budget suggests that the figure would involve tens of thousands of dollars or more. Thus, because they are located in Seattle and Colorado Springs, it seems likely that continued involvement of Ms. Walsh and Mr. Klein in this matter will involve at least $100,000 in additional CJA travel-related expenditures. These disbursements are separate and apart from funds paid to Ms. Walsh for working on the case which, for the trial, has been estimated at $165,120. *Id.* at 9.

One other fact deserves mention. The absence of local CJA counsel representing Mr. Saenz has presented some issues in recent litigation. In a recent motion, counsel for Jairo Saenz identified factors that "significantly limited defense counsel's ability to engage their client's assistance in analyzing discovery." DE 2572-1 at 2. While other factors have been identified as contributing to this problem, the absence of local counsel—and that Mr. Saenz's nearest lawyer is in Indiana— has played a role. *See id.* at 2 n.1 ("Counsel have increased visits with their client in an effort to make certain he is aware of all the discovery provided. [ ] Because of her relative proximity—her office being in Indianapolis—she has been visiting the client more regularly."). In a recent opinion, the Court identified an instance in which input from experienced local counsel might have been of assistance. DE 2566 at 2, *withdrawn on other grounds,* DE 2576.

**Discussion**

In *United States v. Douglas*, 525 F.3d 225, 235 (2d Cir. 2008), the Second Circuit rejected an argument raised by a defendant that "the district court's refusal to continue the appointment of a second attorney for him following the government's notification that it would not seek the death penalty violated his right under 18 U.S.C. § 3005 to be represented by two attorneys." In reaching this determination, the Court of Appeals concluded that "once the government has formally

informed the court and the defendant of its intention not to seek the death penalty, the matter is no longer a capital case within the meaning of § 3005 and that section does not require the district court to continue the appointment of a second attorney." *Id.* at 237.  Thus, there is no obligation for the continued provision of a second counsel.  However, *Douglas* noted that its conclusion "that § 3005 does not entitle a defendant to a second attorney under these circumstances would not preclude a district court, in its discretion, from maintaining the dual appointment in a future case out of a 'concern for fairness at the trial of a criminal offense.'"  *Id.* at 238.  "Deciding when, if ever, the retention of both counsel is necessary in the interest of justice after the government has announced it will not seek the death penalty is an exercise best left to the broad discretion of the district court."  *Id.*

As Ms. Foster notes, the CJA Guidelines provide that, following deauthorization, "[t]he court should, absent extenuating circumstances, make an appropriate reduction in the number of counsel."  DE 2579 at 3 n.5 (listing suggested factors).   Here, for many months, the Court not only continued to authorize a second counsel, but even added a *third* attorney upon defendant's request for assistance with motion practice, which is nearly concluded.  And the Court agrees that for the purposes of the trial, given the complexities of the matter, appointment of a second attorney would not be inappropriate.

However, the problem remains that the two attorneys whose budget are presently before the Court, because of their remote locations, will add substantially—and unjustifiably—to the sums that will be disbursed from the CJA fund.  Moreover, as noted, the appointment of a local

CJA attorney[4] will provide more ready access to the defendant to his attorneys.  As such, substitution of a local CJA panel member for Ms. Walsh and Mr. Klein appears warranted.

Defendant Jairo Saenz argues not only for the continuation of two attorneys through the trial, but specifically that representation by both Ms. Foster and Ms. Walsh be continued through trial.  DE 2440 at 3-4.  At the same time, defendant acknowledges that "[w]hile an indigent defendant has a constitutional right to appointment of counsel, *Gideon v. Wainwright*, 372 U.S. 335, 345 (1963), he does not have a right to demand a particular attorney.  *Gonzalez-Lopez,* 548 U.S. 140, 151 (2006)."  *Id.* at 3.  Nevertheless, defendant cites to several non-binding court opinions suggesting that he has a right to continuity of counsel of choice after an appointment.  *See id.* at 3-6.  Applying Supreme Court precedent, however, the Second Circuit has rejected this notion:

> There is no constitutional right to continuity of appointed counsel. *See generally Morris v. Slappy*, 461 U.S. 1, 11–13, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983) (noting that there is no right to a "meaningful attorney-client relationship"). While the criminal defendant does of course retain some interest in continuous representation, courts are afforded considerable latitude in their decisions to replace appointed counsel, and may do so where a potential conflict of interest exists, *United States ex rel. Stewart v. Kelly*, 870 F.2d 854, 857 (2d Cir.1989), and "in the interests of justice," 18 U.S.C. § 3006A(c), among other circumstances.

*United States v. Parker*, 469 F.3d 57, 61 (2d Cir. 2006).  The Court went on to explain "[a]s the Second Circuit CJA Plan makes clear, '[t]he selection of counsel shall be the sole and exclusive responsibility of the Court, and no CJA applicant or CJA client will be permitted to select his or her own attorney from the Panel or otherwise; and no attorney or CJA Panel member shall have the right to be selected to represent a CJA applicant or CJA client.'"  *Id.* at 62.  Thus, the Court

---

[4] At one time, the large number of defendants in this and several related MS-13 matters made locating conflict-free counsel on this Court's CJA panel somewhat challenging, which accounts for the widely disparate appointments.  However, the passage of time and expansion of the CJA panel has removed this obstacle and the Court is advised that there are now a number of qualified attorneys on the local panel who would not present such a conflict.

finds no merit to Mr. Saenz's claim that, assuming that any right to continuity of appointed counsel exists, such right extends to a choice of appointed counsel as to a *second* appointed attorney.

In order to ensure defendant's rights are fully protected, representation by Ms. Walsh and Mr. Klein is approved and extended through and including July 9, 2024, so that counsel may fully conclude the motion practice, participate in further plea negotiations,[5] and assist in the transition of the case to new counsel. Appointment of a second attorney from the local CJA panel to assist in trial will be made as soon as practicable.

**SO ORDERED**

Dated: Central Islip, New York
      June 4, 2024

                                    /s/ Gary R. Brown
                                    GARY R. BROWN
                                    United States District Judge

---

[5] *See* Letter from Ms. Walsh dated June 3, 2024.