FILED
CLERK
7/2/2025 2:48 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

UNITED STATES OF AMERICA,

              -against-

ALEXI SAENZ, a/k/a "Blasty" and "Plaky,"
*et al.*

              Defendants.

----------------------------------------------------------X

**SENTENCING MEMORANDUM**

16-CR-403(GRB)

**GARY R. BROWN, United States District Judge**:

      Presently before the Court is the sentencing of defendant Alexi Saenz, an admitted leader of the Sailors Clique of the La Mara Salvatrucha street gang, commonly known as MS-13. This is a complex sentencing to which this Court has devoted careful consideration after reviewing voluminous submissions by the parties. The sentence and the reasons underlying that determination follow.

      *Factual Background*

      During his leadership of the Brentwood chapter of MS-13, Saenz presided over eight brutal homicides, three attempted homicides, arson and drug distribution. Saenz supervised, approved, planned and/or participated in the homicides and attempted homicides, horrendous undertakings in which victims were alternately bound, shot, stabbed, beaten and hacked to death with guns, machetes, knives, baseball bats and other bludgeons. In one instance, Saenz took a photograph of a victim's mutilated body, apparently so his crew could get credit for "putting in work." One of the attempted murder victims—years after the act—continues to undergo reconstructive surgery.

      Suspected affiliation with a rival gang, supposed cooperation with police or perceived

1

disrespect of the MS-13 powered all of these attacks, which include the vicious, brutal murder of several teenagers, who had the grave misfortunate of being in the wrong place at the wrong time. Led by this defendant, gang members thoughtlessly visited injury and death upon innocent bystanders. A climate of fear emanating from these heinous acts plagued entire communities.

The defendant pleaded guilty pursuant to a plea agreement reached with the Government invoking Federal Rule of Criminal Procedure 11(c)(1)(C), which, upon its acceptance by the Court, provided for a carceral sentence of between 40 and 70 years. At the plea, the Court indicated its preliminary acceptance, recognizing, among other things, the impact of a trial on the victims, including family members of those killed. Over the course of years, I have watched those victims regularly attend court conferences and proceedings, witnessing their anguish as this protracted matter trudged on. They, and the community at large, deserve closure. As the Court observed at the plea hearing, "the proposed resolution is thoughtful and reasonable because, by taking a plea, the defendant will effectively bring this to an end, not make the victims go through a trial that would just be horrific, not put the public to the expense of a trial [and] not hold this matter off for more years."[1] The Court stands by its commitment. To properly calculate a sentence requires consideration of the contours of that agreement.

### *Discussion*

### *Legal Standard*

Recently, the Supreme Court had occasion to revisit the fundamental principles underlying federal sentencing,[2] noting that:

> In determining the appropriate sentence, the court must consider certain factors set forth in § 3553(a). Some are obvious: The court must consider "the nature and circumstances of the offense," "the history and characteristics of the defendant,"

---

[1] Tr. of Proceedings, July 10, 2024 at 53.
[2] *Esteras v. United States*, No. 23-7483, 2025 WL 1716137, at *4–5 (U.S. June 20, 2025).

and "the kinds of sentences available." [ ] Others require courts to consider guidelines or policies issued by the Sentencing Commission. [ ]And still others reflect discrete policy aims, such as "the need to avoid unwarranted sentence disparities" among similarly situated defendants and "the need to provide restitution to any victims of the offense." [ ]

While all these factors are important, § 3553(a)(2) captures the traditional heartland of criminal sentencing. It requires courts to consider:
"the need for the sentence imposed—
"(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
"(B) to afford adequate deterrence to criminal conduct;
"(C) to protect the public from further crimes of the defendant; and
"(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

"These four considerations—retribution, deterrence, incapacitation, and rehabilitation—are the four purposes of sentencing generally."[3] They speak to the questions at the core of any system of criminal justice: What sentence does the defendant deserve? What sentence will deter criminal conduct in the future? What sentence will protect the public? And what sentence is most likely to help the defendant rehabilitate for transition back into society?

Thus, this Court is required to principally consider the core heartland factors of sentencing as reiterated by the Supreme Court: retribution, deterrence, incapacitation and rehabilitation.

Then, the Court must consider, where applicable, the remaining secondary, though still important, factors in § 3553(a), some of which may be captured in whole or in part by the heartland factors. As delineated in § 3553(a)(1) and (6), these factors include: the nature and circumstances of the offense, the history and characteristics of the defendant and the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Of course, "[t]he fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing

---

[3] *Id., quoting Tapia v. United States,* 564 U. S. 319, 325 (2011).

process."[4]  Having fully evaluated these factors, the Court must fix a sentence which, as required by the opening words of the statute (the so-called "parsimony clause") is "sufficient but not greater than necessary to comply with the purposes set forth in § 3553(a)(2)."[5]

*Analysis*

"Most judges would agree that, under ordinary circumstances, sentencing represents their most difficult and complex responsibility."[6]  This case presents extraordinary challenges.  In addition to the unimaginably heinous acts involved, the plea agreement reached by the parties complicates the sentencing process, as that agreement, in a sense, upends the usual application of rules and principles.  This is not intended critically, as that agreement was adopted by the Court for the reasons set forth earlier.  Nevertheless, the complications remain and must be resolved.

The Court begins, as it must, with consideration of the Guidelines, which, notwithstanding the entry of a guilty plea, recommend a life term.  As part of their negotiations, the Government and the defendant agreed to a sentencing range of between 40 and 70 years, which they acknowledge represents the product of negotiation and is entirely independent of the Guidelines.  The Court has accepted this agreement under Rule 11(c)(1)(C); this Court's discretion to do so is properly exercised pursuant to the Guidelines[7] as the agreed upon sentencing range is supported by justifiable reasons.  Having accepted the agreement reached by the parties, the Court "may not deviate from the 'specific sentence or sentencing range'[ ] recommended or requested by the accepted plea agreement."[8]  Hence, the 40 to 70 year range is binding on the Court.

---

[4] *Gall v. United States*, 552 U.S. 38, 50 n.6, (2007).
[5] *United States v. Ministro-Tapia*, 470 F.3d 137, 140 (2d Cir. 2006)
[6] *United States v. Colucci*, 743 F. Supp. 3d 452, 453 (E.D.N.Y. 2024).
[7] U.S.S.G. § 6B1.2(c)(2)
[8] *United States v. Main*, 579 F.3d 200, 203 (2d Cir. 2009)

Where within that negotiated range should the sentence fall? The Circuit has held that the Court should consult the Guidelines in making the determination of whether to accept a Rule 11(c)(1)(C) agreement in the first instance, suggesting that, in certain circumstances, a sentence under such an agreement is not "based on" the Guidelines.[9] As the Guidelines remain advisory under *United States v. Booker*,[10] though, they can still prove helpful. In this case, in which the Guidelines figures exceed the negotiated range, one can draw an analogy to U.S.S.G. § 5G1.1, which provides for situations in which the Guidelines range exceeds a statutory maximum. In such circumstances, the Guidelines provide that "the statutorily authorized maximum sentence shall be the Guidelines sentence." By extrapolation then, in this case, where the Guidelines exceed the stipulated maximum, the Guidelines would appear to counsel the top end of the stipulated range, in other words, 70 years.

So the Court must next examine the four "heartland" factors. In terms of the punitive heartland factors, meaning retribution and deterrence, no term of years can fully satisfy the demands of these factors given the chilling, inhuman crimes inflicted by this defendant. Incapacitation remains a critical factor, as the evidence and materials submitted show that this defendant has demonstrated no real intent to disclaim his membership in, and leadership of, the MS-13. While his counsel point to a downward trend in violent activity by this defendant during his years at the MDC, his relatively recent involvement in obtaining contraband cellular telephones demonstrates that defendant continues to engage in criminal activity affecting the outside world. Inmates have access to telephones while incarcerated, though those lines are monitored and recorded as a deterrent to continued criminal conduct. That the defendant and

---

[9] *Id*. at 203.
[10] 543 U.S. 220 (2005).

5

coconspirators endeavored to obtain contraband mobile phones, which would be unmonitored, does not allow for innocent explanation.[11] Continued criminal conduct by the defendant heightens considerations of incapacitation and thus weighs heavily in favor of a lengthy sentence. By the same token, his recidivist tendencies, along with his long involvement with the gang, gives little hope of rehabilitation. Thus, the heartland factors all heavily weigh in favor of the maximum term permissible under these circumstances.

The avoidance of disparate sentences imposed upon similarly situated defendants requires a bit more discussion. The Second Circuit has, at times, recognized the curious implications of this provision:

> The district court explicitly invoked § 3553(a)(6), the primary purpose of which was to minimize nationwide disparities, in reducing Wills's sentence in light of his co-defendants' sentences. It is not entirely clear what exactly it means for a district judge to consider the effects of an individual defendant's sentence on nationwide disparities. On the one hand, in order to avoid redundancy with § 3553(a)(4), it must require something different than mere consideration of the Guidelines, which are the statute's primary vehicle for reducing nationwide sentence disparities. On the other hand, it cannot be that a judge must act as social scientist and assess nationwide trends in sentencing with each new defendant-in effect, intuiting Guidelines revisions on an interim basis as a proxy for the Sentencing Commission. We think the mandate to take into account nationwide disparities under § 3553(a)(6), as distinct from the need to give due weight to the Guidelines under § 3553(a)(4), is modest.[12]

From this, the Circuit has extrapolated that "consideration of sentencing disparities of co-defendants is permitted but not required: although § 3553(a) does not require district courts to consider sentencing disparity among co-defendants, it also does not prohibit them from doing so."[13]

---

[11] *See Colucci*, 743 F. Supp. 3d 452, 457 (E.D.N.Y. 2024) (discussing gang activity at MDC fueled by smuggled contraband cellphones).
[12] *United States v. Wills*, 476 F.3d 103, 110 (2d Cir. 2007).
[13] *United States v. Rodriguez*, 648 F. App'x 9, 12 (2d Cir. 2016).

This case involves scores of defendants convicted of highly similar conduct. Indeed, some of the convictions relate to offenses that overlap with the defendant's conduct. This extensive record and broad assortment of comparators presents an unusual opportunity to compare the sentence under consideration with those of codefendants to ensure that the sentence imposed is not unfairly disparate. Judge Bianco and the undersigned have imposed sentences upon codefendants involved in multiple homicides as part of the MS-13 racketeering enterprise, ranging from 25 to 55 years. None of those defendants, though, were involved in all eight homicides for which this defendant is responsible. On the other end of the spectrum, Judge Bianco imposed a life sentence upon a codefendant convicted of nine counts, including one homicide, the only defendant to go to trial in this matter.[14] While each of these determinations involve individualized factors, these previous sentences provide important benchmarks in considering the appropriate determination here.

The remaining considerations as to this defendant are largely individual factors, such as his history and characteristics. While the filings by the defendant explore his personal experiences, which the Court need not articulate other than to note that some are truly abysmal, these are unfortunate but largely inapposite. A defendant who has suffered abuse or deprivation can certainly introduce such matters in support of a claim of diminished capacity or otherwise attempt to deflect responsibility, but here these factors simply cannot be seen as causally related to the offenses under consideration. Section 5K2.13 of the Guidelines advises that a lesser sentence may be warranted where "the defendant committed the offense while suffering from a significantly reduced mental capacity;" but require that "the significantly reduced mental capacity contributed substantially to the commission of the offense." In other words, a

---

[14] *United States v. Suarez*, 2023 WL 3144037, at *4 (2d Cir. Apr. 28, 2023).

defendant's mental impairments might help explain the loss of control in a confrontation, but cannot excuse the repeated and systematic murders and attacks carried out by or at the behest of this defendant. Any question in this regard is eradicated by specific acts by this defendant, such as his decision to take photographs at the scene of a brutal homicide to ensure that his crew got appropriate "credit" within the gang. Section 5K2.13 also provides that a defendant's reduced mental capacity should not be considered when the safety of the community is at issue, which plainly is the case here.

At bottom, there is one significant factor that militates in favor of this defendant in terms of calculating the appropriate sentence within the negotiated range. He entered a guilty plea and facilitated the entry of a plea by his brother, a codefendant. That latter effort involved more than simply entering a plea: as counsel notes, this defendant endeavored to persuade his brother to enter a plea. Together, the entry of those pleas avoided the need for a trial – which had been anticipated to last the better part of a year. The cost to the public of such a trial would have been substantial, and for the victims' families such an extended proceeding would have proven torturous. Thus, I believe the defendant is entitled to some consideration for these actions, both in recognition for his plea and to incentivize others in similar circumstances.

What figure is right? Very few prisoners have survived 70 years in prison. Given the defendant's age, 70 years almost certainly represents life in prison. Providing some consideration for his plea and efforts to obtain his brother's plea, which spared these victims yet more suffering, leads the Court to consider a figure of 68 years. Such a sentence could prove a life sentence, particularly if the defendant continues his participation in gang activities. This small adjustment to the sentence is more consideration than was afforded to the victims for whose tragic death the defendant is responsible, none of whom will enjoy another day of life.

8

That is something that the defendant has to live with during the many decades he will spend in federal custody.

### *Conclusion*

Based on all of these facts and circumstances, and applying the appropriate considerations, the Court hereby sentences the defendant to the custody of the Attorney General for a period of 68 years divided as follows: 58 years on Count 1 followed by a mandatory consecutive 10 year term on Count 38. That will be followed by a period of five years of supervised release. The principal special conditions of supervised release will be to cooperate with immigration officials and not to illegally reenter the United States. The Court is required to impose a $200 special assessment and an order of restitution. No fine will be imposed as the defendant lacks the ability to pay.

The Court finds, consistent with § 3553, that this sentence is sufficient but not greater than necessary to reflect – as best as possible under the circumstances outlined herein – the seriousness of defendants' crimes and promote respect for the law. The defendant is reminded that, to the extent he has not waived it, he may have the ability to appeal his conviction and sentence. A notice of appeal, however, must be filed within fourteen days of the entry of judgment, which is expected today. Absent timely filing of a notice of appeal, any appeal will be forever waived.

SO ORDERED.

Dated: Central Islip, New York
July 2, 2025

/s/ Gary R. Brown
GARY R. BROWN
United States District Judge